Our next case has been submitted on the brief, so we'll move straight to case 4, United States v. Romeo Abrego, appeal number 23-1131. Mr. Beal, whenever you're ready. May it please the court and counsel. Your Honors, in this case, Romeo Abrego pleaded guilty to making two hand-to-hand sales from his home in Champaign, Illinois, of user quantities of methamphetamine, 7 grams and 13 grams, to a DEA confidential source on January 31st and February 7th, 2018. No one else was involved in these two sales. Mr. Abrego's source for those drugs is not in the record. The issue on appeal is whether those two sales are sufficiently similar to 151 grams of meth that were seized on March 29th from a man named James Rissler for that 151 grams to constitute relevant conduct to the two sales of the offense conduct. They, in fact, don't constitute, that is to say, the 151 grams don't constitute relevant conduct because they don't meet the requirements of sentencing guideline 1B1.3. The issue under the guidelines is whether the 151 grams were part of the same course of conduct or part of a common scheme as the offense conduct. But first of all, I just want to clarify that the fact that both sets of drugs came from Mr. Abrego is not determinative of the issue. This court has on numerous occasions stated, and I'm quoting from U.S.B. Ortiz, we have held that the mere fact that the defendant may have engaged in other drug transactions is not sufficient to justify treating those transactions as relevant conduct for sentencing purposes. Mr. Beale, how is this case distinguishable from Mr. Singleton, from the Singleton case? I don't know the answer to that. I'll explain why under the guidelines it's not sufficient for the 151 grams. I know that the government cited Singleton. As I said, the guidelines provide that relevant conduct consists of all acts that were part of the same course of conduct or a common scheme or plan as the offense of conviction. And these, in this case, the two hand-to-hand transactions and the 151 grams are too dissimilar. And the best authority for that contention is U.S.B. Drahheim, 958 F3rd, 651 of 2020 case from this court, where it says the district court needed to distinguish the nature of the two transactions. In one transaction, there was an individual sale of two grams of street meth in a city. In the other, there was a collaborative bulk order from the other side of the nation for nearly 50 grams of pure ice. A one-time order of a large amount of ice from a national distributor does not match up with a small street sale of meth to a local customer. And this is very similar to what we're talking about, 713 grams versus 151 grams. The cases are virtually indistinguishable. And likewise, Mr. Abrego's conduct in January is not part of a common scheme or plan with the March 29th. The February 7th and January 31st are simple one-off hand-to-hand sales from one person to another. By the time we get to March 29th, there's a much more complicated scheme going on that's very different. By that time, Mr. Abrego had moved to Texas after February 7th. He sent the drugs to Mr. Rissler in Illinois. Mr. Rissler, who was not involved in any way in the January 31st and February 7th, he's the one who makes the delivery of four ounces of the six ounces of the 151 grams is roughly six ounces. He's trying to deliver it to a cooperating individual for $4,500 and then the rest of the six ounces to somebody else. And obviously 151 grams is not a user quantity. So at this point, oh, and in addition to that, at that point in time, Rissler was not only delivering for Mr. Abrego, he was selling his own drugs. He was a drug dealer on his own, and some of the drugs he got from Mr. Abrego, he shared with an individual known as he, who was another drug dealer. Do we know if Mr. Rissler was getting drugs from anybody other than Mr. Abrego during this period? He had been selling, he began his relationship with Mr. Abrego in late December of 2017, and he had been selling drugs before that. So he had other sources. In terms of the specific drugs in this case, I'm not sure. But he definitely, in the record it shows, had other sources of drugs. We don't, the 151 grams we acknowledge came from Mr. Abrego. So the point is that there's not, the two hand-to-hand transactions and the 151 are a very different course of conduct there, and don't, under the sentencing guidelines, don't meet the 1B1.3 criteria for a common scheme, because the fact that drugs came from Mr. Abrego are not, is not sufficient. Can you address the other elements that we would have to look at, not just the source of the drugs, but similarity, regularity, and so forth? Yes. I know you pointed us to Draheem, but there are other cases, including, for example, Singleton, but others that you are perhaps... Well, the application, though, to the guidelines says that they have to consider the degree of similarity, regularity, and the time interval as being criteria. And with respect to this, the degree of similarity is what Draheem addresses. The regularity, there were just, there were two. There was the January 31st and February 7th indistinguishable retail sales, and then this big sale in, or big transaction at the end of March. And those are the only two transactions that the judge found in the record, so that's all we have to go on are the offense of conviction and the 151 grams. And that, I would submit, doesn't constitute a regular course of conduct. They're two different transactions two months apart. In terms of timing, it's kind of a wash. I mean, it's not every week, but it's not a two-year break. It's kind of an in-between break, so I don't think the temporal aspect is significant. I think it's kind of a wash as far as both parties go. But it's not two hand-to-hand sales in one major distribution are not a regular course of conduct. They're very different courses of conduct. And in terms of similarity, regularity, and time interval, I don't think any of those support the finding of relevant conduct there. The two incidents are too dissimilar, and they're not enough to create a pattern. Are we barred from considering resource testimony that over the course of the time they were working together, in total, he handled about two kilograms for Mr. Abrego? Well, what I would say about that is that that was contested. The only findings the judge made, he found the 151, and the government agreed with that, actually. This case, Mr. Abrego pled guilty relatively early on. Late in the game, the government came up with its relevant conduct. Now, I'm not accusing the government of doing anything improper by doing it that way. But Mr. Abrego went nuts and moved twice to withdraw his plea agreement because he wanted to contest that relevant conduct. And there were a lot of, I mean, the defense attorney objected over a whole series of things, and the judge didn't make any findings. So this court shouldn't use these other transactions, which the judge did not make a finding on, to support the relevant conduct. All right. Thank you, Mr. Beal. Mr. Simpson. Good morning, Your Honors. May it please the court, I'm Scott Simpson on behalf of the United States. What we see here is Mr. Abrego's guidelines range was 188 to 235 months, and the district judge sentenced him at the bottom of that range to 188 months. Mr. Abrego was involved in an overall scheme to distribute methamphetamine in the Champaign area on his own and through other people. And all of the facts here indicate that Abrego's offenses of conviction, that is, his sales of the methamphetamine to the informant and his provision of 151 grams to Mr. Risler are part of the same course of conduct, a common scheme of plan. I think it's important to point out that the 151 grams came from Mr. Abrego. He was transporting those drugs on behalf of Mr. Abrego. And to answer, I believe it was Judge Jackson Acumi's question earlier, during this period, December 2017 through March 2018, Mr. Risler testified that all of the methamphetamine he distributed came from Mr. Abrego. And so that was the period during which Mr. Abrego or Risler was working with Abrego or the other way around. And Mr. Abrego's sales to the informant happened in the very middle of that period in January and February 2018. So I have to disagree with defense counsel that I believe defense counsel said the timing factor is awash. I don't think I disagree with that. The sales, Mr. Abrego's sales to the informant happened in the middle of the period during which he was working with Mr. Risler. Also happened in the same area. Mr. Risler was working for Mr. Abrego in the Champaign area. That's also where the sales to the informant happened in the Champaign area. Again, also this court's case law has looked at what the drugs are. Here, obviously, same drug involved, methamphetamine, in both the sales to the informant and in distributing through Mr. Risler. Also, the amounts actually match. I mean, they aren't exactly the same, but Mr. Risler was selling amounts of 3.5 grams to 56 grams on behalf of Mr. Abrego. And Mr. Abrego sold 7 grams and 14 grams to the informant. So we're talking about the same quantities. So I don't think I mentioned earlier, obviously, the standard review here is a deferential clear error. I don't think I follow your same quantities point if we're comparing the two initial, the two sales that Abrego was charged with, and then the 151 grams where nothing was effectuated with that amount. The police caught him with it, no sales. So can you help me there, please? Your Honor, obviously, when someone's engaged in distributing methamphetamine, there are several steps in the process. And one of those steps, obviously, is transporting the drugs, and then they break them down into smaller quantities, obviously, to sell them. Mr. Risler was transporting for Mr. Abrego 151 grams, and he was in that early in that process of transporting, and then later, presumably, he would have been distributing smaller quantities of that 151 grams. And so it was all a process of distribution that Mr. Abrego was directing. And again, part of the process of that was distributing or transporting larger quantities, and then Mr. Abrego was involved in selling to the informants. And Mr. Risler, if we look at other facts of this case, other sales that Mr. Risler himself made, they were in that same range of smaller quantities. So your point is merely that one day, the 151 was going to be broken down into smaller quantities, and you're comparing small quantities to small quantities, but correct me if I'm wrong, I didn't see anything in the record about the exact plans for that 151. So with prior sales, Risler did a variety of things. He kept some for himself to use. He split some with Mr. Hill. He sold some at the direction of Abrego. But I didn't see anything in the record that established what the plans were for that 151 grams. That's correct, Your Honor. We don't know exactly what the plan was. But I think as you look at the overall course of dealing that they were using, Mr. Risler was selling amounts from 3.5 grams to 56 grams, again, all of this on behalf of Mr. Abrego. So they were obviously engaged in that same conduct together, that same scheme or plan together. That 151 grams was just part of that whole process of distributing, of transporting and distributing. What's your response to Mr. Bill when I asked about Risler's testimony about the 2 kilograms? That, in essence, the district court did not make findings about that, and so we can't look to that. Your Honor, as you look at the sentencing transcript here, there were a lot of facts for the district court to deal with. And as you said, Your Honor, Mr. Risler testified that he dealt with a total of, he thought, about 2 kilograms on behalf of Mr. Abrego. You have that testimony. You have all of the other amounts that Mr. Risler was selling on behalf of Mr. Abrego, user amounts. And you have the other seizures from Mr. Risler. So there were a lot of, maybe I should say it this way, there were a lot of potential routes that the district court could have gone to determine the relevant conduct here. I think what the district court did was, number one, the 151 grams was a very clear, Mr. Risler was caught with that amount. And so, instead of being a 2 kilogram estimate, he was obviously caught with that 151 grams. And also, I think the district court, this is reflected in what the district court said in the sentencing transcript, that took the offense level to a certain amount. The threshold there was 150 grams. So, since the court had that very clear fact, the seizure of 151 grams, and since it took him above the threshold of 150, I think that's why the court went to that. The court is correct that there was no specific finding about the 2 kilograms. I think the court could well have used that 2 kilogram amount, but I think just to be very clear and to make sure that the record was very clear and that the court did not commit clear error, the court went with the 151 grams. I don't think we've discussed yet the role enhancement. The defense here also, in addition to the relevant conduct, the defense also challenged the role enhancement. I think the facts here easily support finding that Mr. Abrego was a leader or organizer, if not also a manager or supervisor. Abrego had Mr. Risler drive him around for drug transactions or anything that Abrego needed. I'm quoting here, paraphrasing in some places some of Mr. Risler's testimony. Abrego directed Risler in delivering drugs and collecting payment. He told Risler where to go and how much money to collect. Risler never knew who should receive drugs from Abrego, who should pay him, or how much of either of those things until Abrego told him. Once Abrego moved to Texas, he told Risler where to take the drugs and what Risler needed to sell that wasn't already meant for someone else. Each time Abrego sent methamphetamine to Risler from Texas, Abrego directed Risler to share a certain amount with E, whose full name is Emanuel Hill, according to the record. And finally, Risler never told Abrego how much methamphetamine to send to Illinois. Abrego just would tell him that it was on the way. Why didn't the government just charge Mr. Abrego with the 151? Your Honor, I actually don't know the answer to that, I'm afraid. I think it could well have been because the sales of the informant, you had the informant who could testify, that was very, would have been an easy thing to establish, to establish for conviction, for conviction for the offense. And since they had the, and again, since I think the government recognized and ultimately the court recognized that the relevant conduct was, we believe, pretty clear, especially with the 151 grams, I think there was a recognition that... Your Honor, that's, that is exactly what the sentencing guidelines provide. That's, they provide for relevant conduct and the sentence can be based on that. And as this court has said in the past, I can't remember if I'm getting the phrase correctly, but this court has said that that is a powerful tool on the part of, on the part of law enforcement, on the part of the prosecution. That is recognized. And again, that is what the sentencing guidelines provide. And to that extent, it is considered fair. So we would urge the court to affirm. All right. Thank you, Mr. Simpson. And the case will be taken under advisement. Mr. Beal, you were... Yes. Yes, sure, you can. You were appointed in this case. So you come out. Sure. With respect to the amount 151, that's approximately six ounces. Paragraph 19 of the pre-sentence report states that four ounces were going to a government cooperator for $4,500 and the rest were going somewhere else. So that's in the, in the pre-sentence report of the case. And the other, I would just sort of reiterate that Mr. Abrego twice, Mr. Abrego challenged the credibility of the informant, of Rissler, and twice moved to revoke his plea, take back his plea agreement so he could challenge a trial under a beyond a reasonable doubt standard, the irrelevant conduct. And that those motions were denied. But there was a challenge to the beyond the 151, the amounts beyond the 151 grams were challenged in the sentencing hearing and Mr. Abrego wanted to challenge in the trial. Thank you, Mr. Beal. And thank you for accepting the court's appointment in this case.